**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| **BRIAN FARABEE**, #1002739, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.: 2:16-cv-268 |
| | ) | |
| **HAROLD W. CLARKE**, Director, | ) | |
| Virginia Department of Corrections, | ) | |
| | ) | |
| **JACK BARBER**, Commissioner, | ) | |
| Virginia Department of Behavioral Health | ) | |
| and Developmental Services, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**AMENDED REPORT AND RECOMMENDATION**

This matter is before the Court on Petitioner Brian Farabee's ("Petitioner") *pro se* Petition for a Writ of Habeas Corpus ("Petition") filed pursuant to 28 U.S.C. § 2241, ECF No. 1, the Respondents Harold W. Clarke and Jack Barber's ("the Respondents") Motion to Dismiss, ECF No. 30, and Petitioner's Motion for Summary Judgment, ECF No. 37. There are also several outstanding Motions. *See* ECF Nos. 14, 15, 22, 28, 35, 37, 38, 47, 55, 58. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J).

For the following reasons, the undersigned **RECOMMENDS** that the Respondents' Motion to Dismiss, ECF No. 30, be **GRANTED**; that Petitioner's Motion for Summary Judgment, ECF No. 37 be **DENIED**; and that the Petition, ECF No. 1, and the Amended/ Supplemental Petition, ECF No. 12 be **DENIED AND DISMISSED**.

The undersigned further **RECOMMENDS** that Petitioner's Motion for Preliminary Injunction, ECF No. 14, be **DENIED**; Petitioner's Motion for Injunctive Relief by Declaratory Judgment, ECF No. 15 be **DENIED**; Petitioner's Motion for a Stay, ECF No. 17 be **DENIED**; Petitioner's Motion for Entry of Default Judgment, ECF No. 22 be **DENIED**; Respondents' Motion for Leave to File Out of Time, ECF No. 28 be **GRANTED**; Petitioner's Motion for Extension, ECF No. 35 be **GRANTED**; Petitioner's Motion for Summary Judgment, ECF No. 37 be **DENIED**; Petitioner's Motion for Dilation, ECF No. 38 be **DENIED**; Petitioner's Motion for a Stay, ECF No. 47 be **DENIED**; Petitioner's Motion for Reconsideration, ECF No. 55 be **DENIED**; and Petitioner's Motion for Evidentiary Hearing, ECF No. 58 be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner's relationship with the Virginia Department of Corrections ("VDOC") and the Commissioner of the Virginia Department of Behavioral Health and Developmental Services ("DBHDS") is long-standing. By the undersigned's review, Petitioner has been moved between state psychiatric institutions and VDOC facilities for nearly twenty years. The saga tracks its origins to May 3, 1999. On that day, in the Circuit Court of the City of Williamsburg and James City County, Virginia ("W&JCC Circuit Court"), Petitioner was adjudicated Not Guilty by Reason of Insanity ("NGRI") of an arson charge, whereupon he was remanded to the custody of the Commissioner of the Virginia Department of Behavioral Health and Developmental Services ("DBHDS") pursuant to Virginia Code § 19.2-182.3. ECF No. 57, attach. 3 ("Respondents' Exhibit

2

3") at 1. The W&JCC Circuit Court's civil commitment order and Petitioner's need for inpatient hospitalization is frequently reviewed: Virginia Code § 19.2-182.5 requires that when a person is committed to an inpatient hospital after being found NGRI, "the committing court shall conduct a hearing twelve months after the date of commitment to assess the need for inpatient hospitalization . . . at yearly intervals for five years and at biennial intervals thereafter." Va. Code Ann. § 19.2-182.5(a). Most recently, on November 8, 2013, the W&JCC Circuit Court entered an Order recommitting Petitioner to the custody of the Commissioner of VDBHDS for inpatient hospitalization after finding Petitioner to be mentally ill and in need of continued hospitalization, pending further Order of Court. ECF No. 57, attach. 3 at 2.

Since the 1999 adjudication, Petitioner has spent the majority of his confinement at Central State Hospital ("CSH"), with intermittent periods of incarceration in the custody of VDOC due to convictions he incurs, generally for assaulting nurses or staff, while at CSH. For instance, on November 8, 2000, Petitioner pleaded guilty to two counts of malicious wounding against CSH staff in the Circuit Court of Dinwiddie County, Virginia ("Dinwiddie Circuit Court"). Although the W&JCC Circuit Court previously adjudicated Petitioner as NGRI for his 1999 arson charges, and Petitioner was confined at a state mental health hospital (CSH) at the time he incurred the malicious wounding charges, the Dinwiddie Circuit Court found that Petitioner was competent to stand trial, accepted his plea of guilty, and on November 11, 2000, sentenced him to twenty (20) years of incarceration in VDOC, suspending all but three (3) years and four (4) months and placing him on supervised probation for an indefinite period of time. ECF No. 32 at 4. In 2004, Petitioner was again convicted of malicious wounding in the Circuit Court of Sussex County, for which he was sentenced to ten years of incarceration on or about March 17, 2004. ECF No. 57, attach. 3 at 2 n.1. Thus, when Petitioner is not confined in the VDOC serving an active criminal sentence, he is

3

otherwise committed to the custody of the Commissioner of VDBHDS, based on the frequently reviewed 1999 civil commitment Order of the W&JCC Circuit Court.

In 2015, Petitioner was charged with assault and battery and destruction of property. On April 29, 2015, the Dinwiddie Circuit Court issued a show cause order to Petitioner alleging that he violated the conditions of good behavior by assaulting CSH staff members in the spring of 2015, and to demonstrate why his probation should not be revoked. ECF No. 32, attach. 1. The order was served on Petitioner on May 12, 2015 while Petitioner was a patient at CSH. ECF No. 57, attach. 3 at 1, 8. Approximately a week later, Petitioner filed his first state habeas petition with the Supreme Court of Virginia on May 20, 2015. Therein, Petitioner challenged his confinement pursuant to the Dinwiddie Circuit Court revocation proceedings. ECF No. 57, attach. 3 at 1. The Supreme Court of Virginia would later dismiss this first state habeas petition on December 15, 2016. ECF No. 57, attach. 3 at 2.

On June 16, 2015 and July 19, 2015, the Dinwiddie Circuit Court ordered that a competency evaluation be performed on Petitioner, which was performed by Dr. Evan S. Nelson. ECF No. 57, attach. 3 at 1. On August 12, 2015, the Dinwiddie Circuit Court found Petitioner to be competent to proceed with the revocation proceeding. ECF No. 57, attach. 3 at 1. Pursuant to the August competency finding, on September 10, 2015, Petitioner was transported from CSH to Western State Hospital ("WSH"). ECF No. 57, attach. 3 at 2. Upon the Dinwiddie Commonwealth's Attorney's discovery of Petitioner's 2004 malicious wounding conviction in Sussex County, they apparently filed a supplemental letter with the Dinwiddie Circuit Court, and Petitioner was transferred from WSH to Meherrin River Regional Jail ("MRRJ") on October 14, 2015, and was ordered to remain there until his Dinwiddie Circuit Court revocation hearing on November 20, 2015. ECF No. 57, attach. 3 at 2.

4

At the November 20, 2015 revocation hearing, the Dinwiddie Circuit Court found that Petitioner had violated the terms of his previously suspended sentences by virtue of his March 2004 conviction for malicious wounding in Sussex County. ECF No. 32 at 1-2; ECF No. 57, attach. 3 at 2. In the Dinwiddie Circuit Court's November 23, 2015 Revocation Order ("the Revocation Order"), the Court revoked Petitioner's previously suspended sentences, and re-suspended ten years on both sentences, ordering Petitioner to serve an active sentence of six (6) years and eight (8) months on each sentence, to be served concurrently. ECF No. 57, attach. 3 at 2. Petitioner appealed the Revocation Order to the Court of Appeals of Virginia, which was eventually denied on September 29, 2016, but Petitioner did not seek further review of the Revocation Order by appealing to the Supreme Court of Virginia.

Instead, Petitioner proceeded to file multiple petitions for a writ of habeas corpus in both state and federal courts. Because the procedural background of this case is integral to the Court's disposition thereof, the undersigned will now proceed with a chronology of Petitioner's various endeavors to obtain habeas relief:

**A. State Habeas Petitions**

As previously noted, *infra*, shortly after receiving the Dinwiddie Circuit Court's show cause order for revocation proceedings, Petitioner filed his first state habeas petition with the Supreme Court of Virginia on May 20, 2015. Therein, Petitioner challenged his confinement pursuant to the Dinwiddie Circuit Court revocation proceedings. ECF No. 57, attach. 4 at 1-2. The Supreme Court of Virginia would later dismiss this first state habeas petition on December 15, 2016. ECF No. 57, attach. 4 at 1,4.

On November 2, 2016, Petitioner filed a second state habeas petition with the Supreme Court of Virginia, challenging the legality of his confinement pursuant to the Revocation Order

5

upon which the Supreme Court of Virginia determined to be seventeen (17) grounds (Claims (I)-(XVII)), including: (I) The court did not have power to sentence him to VDOC; (II) Petitioner's sentence to VDOC violates the Double Jeopardy Clause; (III) Petitioner's sentence is ultra vires; (IV) The probation violation judgment violated the Petitioner's right to notice of the charge; (V) The show cause order was based on patently false information; (VI) Petitioner's commitment to VDOC violated Due Process; (VII) Petitioner's confinement and sentence constitute cruel and unusual punishment; (VIII) Petitioner's confinement and sentence violate due process; (IX) Petitioner's confinement and sentence violate the Americans with Disabilities Act; (X) Petitioner's confinement and sentence violate equal protection; (XI) Petitioner is actually innocent of the underlying charge of malicious wounding; (XII) Petitioner's guilty pleas to the original charges violated due process; (XIII) Petitioner's confinement with DOC violates Due Process; (XIV) Petitioner's confinement and sentence violate the speedy trial statute; (XV) Petitioner's counsel was ineffective at the November 20, 2015 revocation hearing; (XVI) Dinwiddie Circuit Court violated Due Process by not hearing Petitioner's *pro se* motions; (XVII) Petitioner's credit for time served was not properly calculated. *See* ECF No. 57, attach. 3, *passim*. On July 17, 2017, the Supreme Court of Virginia granted the Department of Corrections' Motion to Dismiss, and ultimately dismissed Petitioner's second state habeas petition. ECF No. 57, attach. 3.

**B. Federal Habeas Petitions (ECF Nos. 1, 12)**

On June 7, 2016, Petitioner filed a *pro se* Section 2241 Petition, ECF No. 1 ("the Petition"), with this Court, asserting four grounds ("Grounds 1-4") and challenging, among other things, his transfer to Red Onion State Prison following the November 2015 revocation proceedings in Dinwiddie Circuit Court and requesting that the Court order his transfer to a mental health facility operated by VDBHDS. ECF No. 1 at 8. The four grounds contained in the Petition include: (1)

6

Petitioner is being held by VDOC in violation of the Due Process Clause; (2) Petitioner is being imprisoned in VDOC in violation of the Double Jeopardy Clause; (3) Petitioner has a Due Process right to be treated in a facility managed by VDBHDS; and (4) Petitioner's placement with VDOC violates the Americans with Disabilities Act ("ADA"). *See* ECF No. 57 at 4, ¶ 7. The specific relief requested in the Petition was for this Court to order "transport . . . forthwith back into the custody of the commissioner of the [V]DBHDS in inpatient hospitalization." *Id.* at 8. Essentially, the gravamen of Petitioner's complaint is that because the W&JCC Circuit Court has adjudicated Petitioner as requiring civil commitment for treatment of his mental illness, any time that Petitioner is transferred to any VDOC facility, or his care is otherwise assumed by an entity not under the control of the Commissioner of VDBHDS, his Constitutional rights are violated.

On October 17, 2016, Farabee filed an Amended/Supplemental Section 2241 Petition, ECF No. 12 ("the Amended/Supplemental Petition"), in this Court, which raised eleven (11) additional claims ("Grounds 5-16")[1], but like the first Petition, ultimately requested that he be "transferred back to the custody of the Commissioner of the [V]DBHDS, or hospital thereof, pursuant to said standing committal ORDER by [W&JCC Circuit Court]." ECF No. 12 at 16. In the Amended/Supplemental Petition, Petitioner raises the following additional eleven claims: (5) the Dinwiddie Circuit Court exceeded its authority in violating the W&JCC Circuit Court Order requiring Petitioner to remain in inpatient hospitalization; (6) the Revocation Order of Dinwiddie Circuit Court violates Petitioner's right to be notified of the nature and cause of the offense against him and his Revocation Hearing Counsel never informed Petitioner of the nature and cause of the

---

[1] The Respondents counted the Amended/Supplemental Petition as raising ten additional claims "Ground 5-15" because Petitioner mistakenly numbered a claim as "13" twice. *See* ECF No. 12 at 8-9.

amended probation violation that resulted in Petitioner's suspended sentence being revoked[2]; (7) Petitioner's sentence arose out of an invalid guilty plea for offenses of which he is actually innocent because it was Petitioner who was attacked and the alleged victim, a CHS employee, was "breaking up the [f]ray;" (8) Petitioner's confinement in VDOC violates the Eighth Amendment's ban on cruel and unusual punishment because Petitioner has a liberty interest in receiving treatment for his medical needs, and "[t]he treatment of specific modality clinically recommended for [P]etitioner is only available in a hospital of [VDBHDS] and is unavailable in [VDOC], which has been recommended to treat his serious mental illness and suicidality [sic];" (9) Petitioner's confinement in VDOC violates Petitioner's Due Process Rights because he is not receiving required treatment for his mental illness and is being subjected to "constant isolation, bodily restraint, and other deprivations [and] restrictions on freedoms of everyday life;" (10) the state of Virginia has no punitive interest in confining Petitioner in VDOC because he is insane and may not be incarcerated as a criminal; (11) Petitioner's sentence and commitment in VDOC violates his right to a Speedy Trial because the November 20, 2015 Dinwiddie Circuit Court Revocation Order revoked his revocation based on an offense (Sussex County malicious wounding) he was convicted of in 2004; (12) the Dinwiddie Count Circuit Court's Revocation Order contains patently false information rendering Petitioner's confinement in VDOC unconstitutional; (13) Petitioner's confinement in VDOC violates his due process rights because he is still under an active commitment Order from W&JCC Circuit Court; (14) Petitioner is actually innocent of the malicious wounding offense; (15) Petitioner's sentence in the Dinwiddie Circuit Court arose out of guilty pleas that are invalid and unlawfully obtained because Petitioner was on high doses of antipsychotic and other mind-altering

---

[2] Petitioner appears to refer to this offense as the 2004 malicious wounding charge in Sussex County. *See* ECF No. 12 at 3 n.1.

drugs when he was being tried for and entered the guilty pleas in Dinwiddie Circuit Court; and (16) Petitioner was denied his right to effective assistance of counsel at the November 2015 Revocation Hearing because the attorney that was appointed to represent Petitioner had previously had a conflict of interest in representing Petitioner, Petitioner had previously filed complaints against the attorney with the Virginia State Bar, and the attorney did not confer with Petitioner and advise him of the charges against him prior to the Revocation Hearing. ECF No. 12 at 1-16. In a subsequent filing, Respondents argue that

> [a]lthough [Petitioner] filed a subsequent amended petition adding additional claims, those claims attack his probation revocation judgement and not the execution of his sentence. That amendment has not been authorized and the claims therein were not addressed in the [original] report and recommendation. As challenges to his convictions, the new claims are not appropriate to a § 2241 habeas. Moreover, these new claims are now under litigation in two cases *Farabee v. Director*, Case No. 2:15cv256 and *Farabee v. Clarke*, 2:16cv661.

ECF No. 57 at 4 n.1. The Court will address its treatment of the claims raised in the Amended/Supplemental Petition in further detail, in Part II.C, *infra*.

In the instant federal matter, on May 31, 2017, and in response to the Petition and the Amended/Supplemental Petition (ECF Nos. 1, 12), the Respondents filed their Rule 5 Answer, Motion(s) to Dismiss, Memorandum of Law in Support, and a *Roseboro* Notice. ECF Nos. 30-33. Therein, the Respondents argued that because Petitioner is a state prisoner attacking the lawfulness of his conviction, the Petition and Amended/Supplemental Petition were appropriately interpreted as seeking relief pursuant to 28 U.S.C. § 2254. ECF No. 32 at 2 (citing *Acres v. Commonwealth*, 2012 U.S. Dist. LEXIS 195259 (E.D. Va. Sept. 28, 2012)). Additionally, the Respondents argued that the Petition and Amended/Supplemental Petition should be denied and dismissed as second and successive because Petitioner had already previously litigated these claims and required the Fourth

9

Circuit's permission before filing the instant Petition and Amended/Supplemental Petition. Because Petitioner had not sought and obtained such permission prior to initiating the instant habeas action, the Court was required to dismiss the matter. ECF No. 32 at 3-5 ("The Antiterrorism and Effective Death Penalty Act of 1996 restricted the jurisdiction of the district courts to hear second or successive applications for federal habeas corpus relief by prisoners attacking the validity of their convictions and sentences by establishing a 'gatekeeping' mechanism.") (citing *Felker v. Turpin*, 518 U.S. 651, 657 (1996); 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.")).  On June 23, 2017 and July 3, 2017, Petitioner filed Responses in Opposition to the Respondents' Motion to Dismiss. ECF Nos. 36, 41.  The Respondents did not file a Reply.

### C. Pending Section 2254 Habeas Petitions

As the Respondents noted in their most recent Response, Petitioner has two other pending Section 2254 habeas cases in this Court.

### 1. Case No. 2:15-cv-256

The first federal habeas action is Case No. 2:15-cv-256, wherein Petitioner sought habeas relief pursuant to Section 2254.  Specifically, Petitioner made the following claims: (I) Court orders to imprison Petitioner, removing him from the custody of the Commissioner of VDBHDS are void and unlawful because his order of commitment expressly states that he shall remain in inpatient hospitalization; (II) Incarceration by the Dinwiddie penal system violates Petitioner's rights against double jeopardy and his Fifth Amendment due process rights; (III) The state cannot  simultaneously confine Petitioner  in the state mental health system under the Commissioner's custody while he is in jail under VDOC's custody; (IV) Confining Petitioner in jail under the custody of the VDOC

10

violates the Eighth Amendment cruel and unusual punishment clause because the VDOC does not have the medical or mental health resources to care for Petitioner; (V) Petitioner's probation officer made inaccurate statements as a basis to revoke his 2000 suspended sentence in her April 29, 2015 violation report to the Dinwiddie Circuit Court; (VI) Petitioner was denied the right to effective assistance of counsel throughout the 2015 revocation process; (VII) Counsel appointed to represent Petitioner in the November 20, 2015 revocation hearing had a conflict of interest and abandoned Petitioner's case in violation of Petitioner's right to counsel and his right to due process; (VIII) Judge Robert O'Hara, the Dinwiddie Circuit Court judge assigned to preside over Petitioner's 2015 probation revocation hearing had a conflict of interest because he presided over one of Petitioner's revocation hearings in 2003, and Petitioner filed complaints to the Judicial Inquiry and Review Commission against Judge O'Hara; (IX) The suspended sentence imposed on Petitioner in 2000 is unconstitutional because he is actually innocent of the charges due to his inability to knowingly and intelligently understand the proceedings against him; (X) Petitioner is actually innocent of the 2000 malicious wounding charges. *Farabee v. Director*, Case No. 2:15-cv-256, ECF No. 1. The undersigned found that the Petition in 2:15-cv-256 was a "mixed" petition because Petitioner had failed to exhaust all of his claims in the state courts, and therefore recommended dismissal without prejudice to allow Petitioner to refile it after exhausting his claims in state court, the District Court dismissed the matter with prejudice and denied reconsideration. Petitioner appealed to the Fourth Circuit, arguing that the District Court erroneously dismissed this first 2254 petition with prejudice. The Fourth Circuit agreed and vacated the District Court's Final Order dismissing the matter with prejudice and the Order denying reconsideration, and remanded the matter back to the District Court for reconsideration. Accordingly, every claim raised in Case No. 2:15-cv-256 is still pending before this Court.

11

2. Case No. 2:16-cv-661

After filing the instant Section 2241 Petition on June 7, 2016, but *prior* to resolution of his first Section 2254 petition in Case No. 2:15-cv-256, Petitioner filed a second Section 2254 petition in this Court on November 17, 2016 in Case No. 2:16-cv-661. Therein, Petitioner raised the following grounds for federal habeas relief: (I) The Dinwiddie Circuit Court was without jurisdiction to supersede the commitment order of W&JCC Circuit Court; (II) Petitioner's commitment to VDOC violated the Double Jeopardy Clause; (III) The criminal commitment order was ultra vires; (IV) Petitioner's right to notice of the charge against was violated; (V) Petitioner has been falsely imprisoned; (VI, VIII & XIII) Petitioner's due process rights have been violated by his confinement in a penal institution; (VII) Petitioner has been subjected to cruel and unusual punishment; (IX) Petitioner's placement within VDOC violates the Americans with Disabilities Act; (X) Petitioner's placement with VDOC violates equal protection; (XI) Petitioner is actually innocent; (XII) Petitioner's 2000 guilty pleas were invalid and violated due process and his challenge is not procedurally barred because he is actual innocent of the charges; (XIV) Petitioner's sentence and confinement violate his right to a speedy trial; (XV) Petitioner's attorney at the probation revocation hearing was ineffective because: (a) She had a conflict of interest; (b) She did not prepare a defense; (c) She did not argue or present a case that Petitioner was incompetent; (d) She did properly present Petitioner's appeal; (XVI) The Dinwiddie Circuit Court violated Petitioner's due process rights by refusing to hear his *pro se* motions; (XVII) A decision favorable to the Petitioner would be good public policy. *Farabee v. Clarke*, Case No. 2:16-cv-661, ECF No. 1.

**D. Original Report and Recommendation (ECF No. 42)**

In the original Report and Recommendation (ECF No. 42), dated July 28, 2017, the

12

undersigned recommended that both the Petition and the Amended/Supplemental Petition be denied as moot. *See* ECF No. 42 ("A habeas case under § 2241 can be rendered moot if the petitioner received the relief sought in the petition.") (citing *Hood v. Johns*, 432 F. App'x. 180 (4th Cir. 2011); *Reyes v. United States Immigration & Naturalization Serv.*, 141 F. App'x. 96 (4th Cir. 2005); *Ampadu v. Crawford*, No. 2:16-cv-612, 2017 WL 772917 (E.D. Va. Jan. 27, 2017); *Rivas v. Wilson*, No. 3:14CV719, 2015 WL 9438027 (E.D. Va. Nov. 18, 2015)). These recommendations were based upon the undersigned's mistaken belief that the relief requested by Petitioner in both the Petition and the Amended/Supplemental Petition, namely, to be transferred back to the custody of the Commissioner of VDBHDS, was satisfied by Petitioner's return to Marion. ECF No. 42 at 4. This oversight was brought to the Court's attention by virtue of the various Objections to the Report and Recommendation filed by Petitioner. *See e.g.,* ECF No. 48 (Objection to Report and Recommendation); ECF No. 49 (Supplemental Objection to Report and Recommendation); ECF No. 50 (Memorandum in Support of ECF No. 48 and 49); ECF No. 52 (Second Supplemental Opposition to Report and Recommendation).[3]

In ruling on Petitioner's various Objections and Supplemental Objections to the Original Report and Recommendation, the District Court stated "the Marion Correctional Treatment Center is a Virginia Department of Corrections facility and the relief Petitioner seeks is placement in the custody of the Department of Behavioral Health and Developmental Services ('DBHDS') and/or at a DBHDS facility. . . . The Court finds it necessary for Respondent to file a response to the Objections raised in ECF Nos. 48/50 and 49." ECF No. 54 at 1-2 (citing ECF No. 48 at 4). The matter was re-referred to the undersigned for the generation of an Amended Report and

---

[3] On October 6, 2017, Petitioner filed a "Memorandum in Support of Petitioner's Objections to Magistrate Judge's Report and Recommendations. ECF No. 48. On October 19, 2017, Petitioner filed what appears to be an exact duplication of the memorandum. ECF No. 50.

Recommendation. The Court also ordered the Respondents to file a response addressing the issues raised by Petitioner's Objections.

On November 27, 2017, the Respondents filed a Response to the Objections as directed by the November 9, 2017 District Court Order, as well as four exhibits in support thereof. ECF No. 57, attachs. 1-4.[4] Therein, the Respondents concede that Petitioner's Objections correctly state that the Petition and Amended/Supplemental Petition do not seek transfer back to Marion, because Marion is a VDOC facility, but rather a transfer from a VDOC facility to a VDBHDS facility. ECF No. 57 at 1, ¶¶ 1-2. The Respondents explain that Petitioner was sent to Marion because it is an accredited behavioral health facility used by VDOC to treat inmates with acute mental illness, but Petitioner was transferred out of Marion and back to the VDOC institution from where he came, Red Onion State Prison ("ROSP") when his mental illness was no longer acute. ECF No. 57 at 1, ¶ 2. Notwithstanding these clarifications, the Respondents maintain the position they took in their Motion to Dismiss, namely, that the Petition and the Amended Petition should be dismissed for four reasons. First, although the Petition is made pursuant to Section 2241, the Petition and Amended Petition is second and successive, and Petitioner has not received permission from the Fourth Circuit to file a successive Petition. ECF No. 57 at 2-4, ¶¶ 3-6. Second, according to the Respondents, all of Petitioner's claims have been defaulted. ECF No. 57 at 4-6, ¶¶ 7-12. Third, in *Williams v. Commonwealth*, 294 Va. 25 (2017), the Virginia Supreme Court reaffirmed that "a civil commitment does not preclude the criminal punishment of a person who commits a new offense in a mental health facility." ECF No. 57 at 6-8, ¶ 12. Finally, Petitioner is provided with psychiatric

---

[4] Respondents' Exhibit A is a print out of the VDOC website providing details about Marion. ECF No. 57, attach. 1. Exhibit B is the Affidavit of T. Huff, the Supervisor of Red Onion Prison Mental Health Services. ECF No. 57, attach. 2. Exhibit C is the Supreme Court of Virginia's July 17, 2017 Order denying Petitioner's second state habeas petition. ECF No. 57, attach. 3. Exhibit D is the Supreme Court of Virginia's December 15, 2016 Order denying Petitioner's first state habeas petition. ECF No. 57, attach. 4.

care at ROSP; however, Petitioner refuses to cooperate with mental health providers.  For example, Petitioner is prescribed anti-psychotic medication, but he refuses to take it.  ECF No. 57 at 8, ¶ 13 (citing ECF No. 57, attach. 2 at 1-2, ¶ 5). Additionally, any restrictions complained of by Petitioner in his Petitions or various Motions are necessitated by the fact that Petitioner continues to be a danger to himself and others.  ECF No. 57 at 8, ¶ 13 (citing ECF No. 57, attach. 2 at 1-2, ¶ 5; ECF No. 49, attach. 1 at 1).

Petitioner filed several Memoranda in Opposition to the Respondents' November 27, 2017 Response.  *See* ECF No. 62 (Reply to ECF No. 57); ECF No. 63 (Memorandum in Opposition); ECF No. 64 (Supplemental Memorandum in Opposition).  The matter is once again ripe and ready for the undersigned's recommended disposition.

In the absence of grounds warranting blanket dismissal of Petitioner's cause of action based on mootness, the undersigned **RECOMMENDS** that the Original Report and Recommendation be **SUPERSEDED AND REPLACED** in its entirety, and submits the instant Amended Report and Recommendation for findings of fact and recommended disposition of the Respondents' Motion to Dismiss.  By virtue of the Report and Recommendation needing to be amended, all of the other Motions disposed of therein remain ripe and ready for disposition, as discussed in greater detail in the preceding section, Part I.E, *infra*.

**E.  Outstanding Motions**

1. Petitioner's Motion for Preliminary Injunction (ECF No. 14)

On December 2, 2016, Petitioner filed a Motion for Preliminary Injunction wherein he complained that Marion continually kept him in isolation and or in segregation unit, and requested that the Court provide injunctive relief to prevent Petitioner's further subjection to such conditions. ECF No. 14.

2. Petitioner's Motion for Injunctive Relief by Declaratory Judgment (ECF No. 15)

On December 2, 2016, Petitioner filed a Motion for Injunctive Relief by Declaratory Judgment. ECF No. 14. Therein, Petitioner requests that the Court declare that Petitioner has a right to be treated at VDBHDS and order that Petitioner be transferred to a facility within the custody of the Commissioner of VDBHDS. Additionally Petitioner requests that the Court declare that if Petitioner's entitlement to the specific treatment and terms he seeks are unfulfilled, order the offending parties to pay damages to Petitioner.

3. Petitioner's Motion to Stay (ECF No. 17)

On December 12, 2016, Petitioner filed a Motion to Hold in Abeyance (docketed as a "Motion to Stay"). ECF No. 17. Therein, Petitioner explained that he was being transferred from Marion to the Virginia Peninsula Regional Jail for a court hearing in Williamsburg, and requested that the Court refrain from taking any action until he was returned to Marion and able to respond and defend his claims.

4. Petitioner's Motion for Entry of a Default Judgment (ECF No. 22)

On April 19, 2017, Petitioner filed a Motion for Default Judgment, seeking the Court enter judgment in Petitioner's favor and grant him the relief requested in the Petition and the Amended/Supplemental Petition based on the Respondents' failure to respond to Petitioner's claims and pending Motions (ECF Nos. 6, 14, 15) by a date certain, despite being directed to do so by the Court.

5. Respondents' Motion for Leave to File Out of Time (ECF No. 28)

On May 31, 2017, Respondents' filed a Motion for Leave to File a Response to the Petition and outstanding Motions. ECF No. 28. Therein, counsel for Respondents represented to the Court that during the month of January 2017, the Office of the Attorney General experienced problems

with its e-mail system and believe that the electronic notices sent on January 25 and 26, 2017, may have been blocked from its system. Upon inquiry by the Clerk as to their failure to respond, Respondents immediately made efforts to comply with the Court's order and obtain permission from the Court to grant their extension and to deem their responsive pleadings and Motion to Dismiss timely filed.

### 6. Petitioner's Motion for Extension (ECF No. 35)

On June 15, 2017, Petitioner file a Motion for Extension, seeking additional time to file his responses to the Respondents' newly filed Motion to Dismiss (ECF No. 30), which was filed on May 31, 2017. In his Motion for Extension, Petitioner sought an unspecified amount of time to respond to the Respondents' dispositive motion, explaining that he had recently returned from to Marion after being hospitalized after "undergoing major surgery, and after returning to the prison, he received the recently filed Motion to Dismiss." ECF No. 35 at 1.

### 7. Petitioner's Motion for Summary Judgment (ECF No. 37)

On June 23, 2017, after the Respondents had already filed their Motion to Dismiss (ECF No. 30), Petitioner filed a Motion for Summary Judgment, seeking judgment as a matter of law on his requests for habeas relief. ECF No. 37.

### 8. Petitioner's Motion for Extension of Time (ECF No. 38)

On June 23, 2017, Petitioner filed a "Motion for Dilation" (docketed as "Motion for Extension of Time") seeking what the undersigned interprets as a standing, general extension of time beyond that which is afforded litigants by the federal and local rules to reply to any and all of the Respondents' filings.

### 9. Petitioner's Motion to Stay Proceedings (ECF No. 47)

On September 20, 2017, Petitioner filed a "Motion to Stay the Proceedings" because

"Petitioner is in the process of attempting to obtain counsel on retainer to represent him for this habeas matter." ECF No. 47 at 1.

10. Petitioner's Motion for Reconsideration (ECF No. 55)

On November 9, 2017, Petitioner filed a Motion for Reconsideration, requesting that the Court reconsider its previous denial of Petitioner's Motion for Injunctive Relief (ECF No. 6). In an Order dated March 7, 2017, the Court denied Petitioner's Motion for Preliminary Injunction as moot, based on the Court's finding that Petitioner was no longer being housed in a super-maximum security facility and instead was committed to the state's mental health system. ECF No. 21. Petitioner requests that the Court reconsider his previous motion because on October 11, 2017, Petitioner was again transferred from Marion to a different super-max facility. According to Petitioner, without an injunction, Petitioner will continue to be transferred to other super-max prisons and subjecting him to irreparable injury. ECF No. 55 at 1.

11. Petitioner's Motion for Evidentiary Hearing (ECF No. 58)

On November 27, 2017, Petitioner filed a Response to the Court's November 9, 2017 Order (ECF No. 54) and requested an evidentiary hearing to present evidence regarding the disposition of the Respondents' Motion to Dismiss in light of the District Court's re-referral of the matter to the undersigned. ECF No. 58.

## II. ANALYSIS

### A. Section 2241

Section 2241 authorizes the federal court to issue a writ of habeas corpus to state and federal prisoners who are "in custody in violation of the Constitution of laws or treaties of the United States." More specifically, a § 2241 habeas petition "challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a

prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention . . ." *Gonzalez-Martinez v. Drew*, No. 8:11-cv-00437, 2011 WL 6982247, at *4 n.1 (D.S.C. Dec. 16, 2011) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)). *See also In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) ("Attacks on the execution of a sentence are properly raised in a § 2241 petition."); *Ryan v. Cross*, No. CIV.A. 2:08CV120, 2009 WL 1390818, at *3 (N.D.W. Va. May 15, 2009) ("[A] § 2241 petition is appropriate where a prisoner challenges the fact or length of his confinement, but generally not the conditions of that confinement.") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 499–500 (1973)).[5]

Here, the Respondents originally argued that this action should be deemed as arising under § 2254, rather than under § 2241 because Petitioner is "a state prisoner attacking the lawfulness of his conviction." ECF No. 32 at 2-3. However, in their subsequent Response, the Respondents appear to concede that at least the first four grounds asserted in the Petition are made pursuant to Section 2241. Respondents expressly declined to address the eleven additional claims asserted in the Amended/Supplemental Petition (ECF No. 12). *See* ECF No. 57 at 4 n.1 ("Although [Petitioner] filed a subsequent amended petition adding additional claims, those claims attack his probation revocation judgement and not the execution of his sentence. That amendment has not been authorized and the claims therein were not addressed in the [original] report and recommendation. As challenges to his convictions, the new claims are not appropriate to a § 2241 habeas. Moreover, these new claims are now under litigation in two cases Farabee v. Director, Case No. 2:15cv256 and Farabee v. Clarke, 2:16cv661."). The undersigned notes that while *many* of the claims asserted in the Amended/Supplemental Petition are not reviewable pursuant to Section 2241, some of the

---

[5] § 2241(d) provides that a petitioner can file a habeas petition under this statute to challenge the "sentence of a State court of a State which contains two or more Federal judicial districts...in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him."

Amended/Supplemental Petition grounds *do* appear to assert a Section 2241 claim. Accordingly, to the extent that any of the sixteen total claims asserted in the Petition and/or the Amended/Supplemental Petition are properly before the Court as a challenge to the execution of Petitioner's sentence, they will be addressed. Alternatively, if the opposite is true, (that any of the claims are properly brought under Section 2254), the undersigned declines to address them and will recommend denial on that basis. *See* Part II.C, *infra*. In light of Petitioner's two other pending Section 2254 matters in this Court, *see* Part I.C, *supra*, there is ample opportunity for Petitioner's claims to be considered under the proper statutory mechanism.

**B. The Petition (ECF No. 1)**

      1.  <u>Petitioner is being held by VDOC in violation of the Due Process Clause (Claim 1</u>)

      When dismissing this claim in Petitioner's most recent state habeas petition, the Supreme Court of Virginia rejected this claim as meritless and also barred because the issue was raised at trial and rejected on direct appeal to the Virginia Court of Appeals and could have been raised to the Supreme Court of Virginia, but was not. ECF No. 57, attach. 3 at 2 (citing *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), *cert. denied*, 419 U.S. 1108 (1975)). Notwithstanding this procedural bar to federal habeas review, the undersigned also **FINDS** that this claim is meritless.

      In ruling on a substantially similar argument in *Williams v. Commonwealth*, the Supreme Court of Virginia found that

> Regarding due process, it is undisputed that Williams sentencing for both the July Offense and the August Offenses satisfied due process in that he had a hearing at which evidence was presented and he was provided a chance to be heard and to present documentary evidence as well as witnesses, and he had counsel throughout the proceedings. Indeed, Williams does not challenge the propriety of the sentence imposed for the July Offense or the involuntary civil commitment ordered with respect to the August Offenses; instead, his appeal focuses on the propriety of the sequencing of the imposition of the period of incarceration and

the involuntary civil commitment.

> Williams argues that the ends of justice exception should be applied here, because the circuit court "ignored the seriousness" of his mental illness and he is being punished "for having a mental illness." He asserts that the "process due to him was to commit him directly to inpatient hospitalization to receive treatment" as recommended by the doctors, and that punishing him by sending him to prison is a "manifest injustice." We disagree.

*Williams v. Commonwealth*, 294 Va. 25, 28 (2017) (citing *Hood v. Commonwealth*, 280 Va. 526, 536–37, 701 S.E.2d 421, 427 (2010)) (internal citation omitted). Accordingly, the undersigned **RECOMMENDS** that Petitioner's request for habeas relief on the grounds encapsulated by Claim 1 be **DENIED**.

### 2. Petitioner is imprisoned in violation of the Double Jeopardy Clause (Claim 2)

In dismissing this claim, the Supreme Court of Virginia found such claim to be successive, having been resolved against Petitioner in his first state habeas petition. *See* ECF No. 57, attach. 3 at 3-4. Notwithstanding this procedural bar to federal review, the claim lacks merit. The W&JCC Circuit Court's determination of Petitioner's incompetency and adjudication as NGRI is not binding on a subsequent, opposite finding by the Dinwiddie County Circuit. The Supreme Court of Virginia's holding in *Williams v. Commonwealth* further supports this holding. Therein, Williams argued that his due process rights were violated by being made to serve a period of incarceration for offenses committed in July 2014, but subjected to a civil commitment for offenses he committed in August 2014. The Supreme Court of Virginia held that

> The five-year prison sentence Williams has been sentenced to serve is for a crime he committed and to which he pled guilty while he was sane and competent. It is not a manifest injustice that he be required to serve that sentence. In serving that five-year sentence, he is not being punished because he has a mental illness, but because of a crime he committed before his alleged temporary state of insanity and to which he pled guilty after he had recovered from his

purported temporary state of insanity.

There is no statutory direction concerning the proper sequence of the imposition of his incarceration for the criminal conviction in relation to his involuntary civil commitment for different crimes he committed during his subsequent period of temporary insanity. Williams' argument, in essence, is that imposing his incarceration before his involuntary civil commitment is manifestly unjust because it deprives him of mental health treatment that he needs. However, there is no manifest injustice in regard to the sequencing of his incarceration and involuntary civil commitment because his confinement for his involuntary civil commitment is suspended conditioned upon his incarceration, and the Department of Corrections (DOC) is required by statute to provide Williams all health treatment he needs during his period of incarceration.

*Williams v. Commonwealth*, 294 Va. 25, 28–29 (2017).  Accordingly, the undersigned **FINDS** that

Petitioner is not entitled to relief on this ground, and **RECOMMENDS** denial of habeas relief on

Claim 2.

### 3. Petitioner has a Due Process right to be treated in a facility managed by VDBHDS (Claim 3)

The Supreme Court of Virginia denied this claim in its disposition of Petitioner's second

state habeas petition. *See* ECF No. 57, attach. 3 at 2 (finding it to be barred as a non-jurisdictional

issue that is not cognizable in a petition for a writ of habeas corpus) (citing *Slayton v. Parrigan*, 215

Va. 27, 29, 205 S.E.2d 680, 682 (1974), *cert. denied*, 419 U.S. 1108 (1975)).  *See Reid v. True*, 349

F.3d 788, 805 (4th Cir. 2003).  Notwithstanding this procedural bar to federal habeas review, this

claim is meritless.

To be sure, Petitioner has a Due Process right to proper medical treatment.    However,

Petitioner does not have "a right to a specific custody classification, to a transfer, to a non-transfer,

or to work release." *Hall v. United States*, No. 5:11–HC–2159–D, 2012 WL 1196234, at *2

(E.D.N.C. Apr. 10, 2012) (citing *O'Bar v. Pinion*, 953 F.2d 74, 83–84 (4th Cir. 1991)).  State law

22

clearly permits the current management of Petitioner's mental illness by VDOC.  In *Williams v. Commonwealth*, the Supreme Court of Virginia observed that

> the Department of Corrections (DOC) is required by statute to provide Williams all health treatment he needs during his period of incarceration.
>
> Prisons are required to provide inmates with medical care and treatment. Code § 53.1–32(A) ("It shall be the general purpose of the state correctional facilities to provide proper ... medical and *mental health care and treatment*, discipline and control of prisoners .... In no event shall any prisoner be denied medically necessary service due to his inability to pay.") (emphasis added).  *See also Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976) (concluding that the principles of the Eighth Amendment "establish the government's obligation to provide medical care for those whom it is punishing by incarceration," and that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment") (citation omitted)).  Just as the DOC is required to provide care for an inmate with a broken leg, it is also required to provide care for an inmate with a mental health condition.  Therefore, Williams will receive any mental health care treatment he needs while incarcerated.
>
> In addition, should the need arise, Williams can also be transferred to a facility outside of the DOC, including the facility where he would have served his involuntary civil commitment, if the DOC determines that it cannot provide the kind of care he requires during his period of incarceration.  Code § 19.2–169.6 (providing a mechanism for involuntary civil commitment of inmates); *see also* Code § 53.1–40.2 (providing for the "involuntary admission [to a hospital] of a prisoner who is sentenced and committed to the [DOC] and who is alleged or reliably reported to have a mental illness to a degree that warrants hospitalization") *and* Code § 53.1–40.9 (providing for an involuntary civil commitment proceeding for a "prisoner whose release from the custody of the [DOC] is imminent and who may have a mental illness and be in need of hospitalization or treatment").
>
> As a DOC inmate, Williams can be provided with mental health treatment options consistent with the recommendations of the psychologist and psychiatrist who examined him, or other assessments of his mental state and needs undertaken during his incarceration, if he continues to need such treatment.

23

*Williams v. Commonwealth*, 294 Va. 25, 29–30 (2017).  The tenets underlying the Supreme Court of Virginia's decision apply with equal force to the facts of Petitioner's case and especially his claim that he has a Due Process right to be treated exclusively at a VDBHDS facility, as opposed to regular mental health treatment at VDOC.  As the Respondents' Response to Petitioner's Objections notes, ROSP provides mental health treatment to Petitioner, and when the need arises, Petitioner's acute mental illness is treated at other VDOC facilities.  *See* ECF No. 57 at 8, ¶ 13.  Accordingly, the undersigned **RECOMMENDS** that Petitioner's claim for habeas relief be **DENIED** with respect to Claim 3.

    4.  Petitioner's placement in VDOC violates the Americans with Disabilities Act (Claim 4)

Petitioner appears to argue that because his mental illness qualifies as a disability under the Americans with Disabilities Act ("ADA"), the unjustified periods of isolation and restrictive environments he is subjected to in ROSP and lack of proper medical treatment deprive Petitioner of due process rights and subject him to constitutionally impermissible conditions.  In ruling on this same claim in Petitioner's second state habeas petition, the Supreme Court of Virginia dismissed this claim, holding that "a petition for a writ of habeas corpus may not be employed as a substitute for an appeal."  ECF No. 57, attach. 3 at 2-3 (citing *Brooks v. Peyton*, 210 Va. 318, 321–22, 171 S.E.2d 243, 246 (1969)).   The application of the rule specified in *Brooks v. Peyton* constitutes an adequate and independent state law bar.  *Hilton v. Dir. of the Dep't of Corr.*, No. 2:16CV135, 2016 WL 8285664, at *3 (E.D. Va. Dec. 7, 2016), *report and recommendation adopted*, No. 2:16CV135, 2017 WL 663237 (E.D. Va. Feb. 17, 2017), *appeal dismissed sub nom. Hilton v. Dir. of Dep't of Corr.*, 694 F. App'x 203 (4th Cir. 2017) (citing *Jeffers v. Allen*, No. 1:15cv808, 2016 U.S. Dist. LEXIS 36005, at *7–8 (E.D. Va. Mar. 18, 2016) (finding that the state habeas court's reliance on *Brooks v. Peyton* constituted an adequate and independent state-law ground for a finding of

24

procedural default)). Accordingly, Petitioner's claim is procedurally defaulted.

Petitioner may only overcome procedural default and obtain federal review on the merits if he is able to demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice. *Edwards v. Johnson*, No. 2:10CV339, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010), *report and recommendation adopted*, No. 2:10CV339, 2011 WL 642711 (E.D. Va. Feb. 11, 2011) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). The undersigned **FINDS** that Petitioner has failed to make such a demonstration.

Even if Petitioner could get around the procedural bar in this case, he would not be entitled to relief because his constitutional claim fails on the merits. *See Hedrick v. True*, 443 F.3d 342, 366 (4th Cir. 2006). Although Petitioner alleges that he does not receive needed treatment in ROSP, this averment is contradicted by the declaration of the Supervisor of ROSP Mental Health Services. *See* ECF No. 57, attach. 2 at 2, ¶ 5 ("[Petitioner] is being seen by the Psychiatrist at [ROSP] on a routine basis and also by a Qualified Mental Health Professional (QMHP) on a scheduled, weekly basis. He was prescribed psychotropic medications when he arrived at [ROSP], but has opted not to take them. The medications were discontinued to his request and non-compliance. [Petitioner] was on restrictions as a safeguard to prevent self-harm (which he engaged in for the first three weeks here)"). Petitioner does not, and cannot contradict these facts. Rather, by his own admissions, Petitioner demonstrates that he has been a danger to himself and that prison officials utilized measures such as isolation and removal of personal items to remove such items from Petitioner's available methods of self-harm. *See e.g.*, ECF No. 49, attach. 1 at 1 (Petitioner explaining that he stuck items in a self-inflicted wound). Accordingly, the undersigned **RECOMMENDS** that Claim 4 be **DENIED**.

Having determined that none of the four grounds alleged in the Petition (ECF No. 1) entitle Petitioner to federal habeas relief under Section 2241, the undersigned next turns to the additional eleven grounds asserted in the Amended/Supplemental Petition (ECF No. 12).

## C. The Amended/Supplemental Petition (ECF No. 12)

As previously noted, the undersigned finds that many, but not all of Petitioner's grounds for habeas relief in the Amended/Supplemental Petition amount to attacks on Petitioner's sentence itself rather than the execution thereof, and can therefore only be raised by virtue of a Section 2254 petition. These claims include: Grounds 5-7, 11-12, 14-16. Accordingly, the undersigned **RECOMMENDS** that Petitioner's request for habeas relief on the aforementioned grounds (Grounds 5, 6, 7, 11, 12, 14, 15, and 16) be **DENIED** as improperly raised under Section 2241.

However, the undersigned **FINDS** that Ground 8 (Petitioner's confinement in VDOC violates the Eighth Amendment's ban on cruel and unusual punishment because Petitioner has a liberty interest in receiving treatment for his medical needs, and "[t]he treatment of specific modality clinically recommended for [P]etitioner is only available in a hospital of [VDBHDS] and is unavailable in [VDOC], which has been recommended to treat his serious mental illness and suicidality [sic];"), Ground 9 (Petitioner's confinement in VDOC violates Petitioner's Due Process Rights because he is not receiving required treatment for his mental illness and is being subjected to "constant isolation, bodily restraint, and other deprivations [and] restrictions on freedoms of everyday life;"), Ground 10 ( the state of Virginia has no punitive interest in confining Petitioner in VDOC because he is insane and may not be incarcerated as a criminal), and Ground 13 (Petitioner's confinement in VDOC violates his due process rights because he is still under an active commitment Order from W&JCC Circuit Court) are properly raised under Section 2241, yet amount to recycled iterations of the same claims asserted in Claims 1-4 of the Petition.

26

To the extent that Ground 8 specifically invokes the Eighth Amendment's protection against cruel and unusual punishment, the undersigned **FINDS** that the Supreme Court of Virginia considered and dismissed this claim as barred because the Supreme Court previously resolved the claim against Petitioner in his first state habeas petition. ECF No. 57, attach. 3 at 3-4. Notwithstanding this procedural bar, the undersigned **FINDS** that this claim lacks merit because Petitioner does have the opportunity to receive proper mental health treatment while at ROSP and other VDOC facilities, and Petitioner simply refuses to accept such treatment. See ECF No. 57, attach. 2 at 1-2, ¶ 5.

Moreover, the Supreme Court of Virginia's decision in *Williams* specifically approved of the provision and management of mental health treatment for a prisoner incarcerated in the VDOC notwithstanding a simultaneous civil commitment order. *See Williams v. Commonwealth*, 294 Va. 25, 30 (2017) ("In addition, should the need arise, Williams can also be transferred to a facility outside of the DOC, including the facility where he would have served his involuntary civil commitment, if the DOC determines that it cannot provide the kind of care he requires during his period of incarceration. Code § 19.2–169.6 (providing a mechanism for involuntary civil commitment of inmates); *see also* Code § 53.1–40.2 (providing for the 'involuntary admission [to a hospital] of a prisoner who is sentenced and committed to the [DOC] and who is alleged or reliably reported to have a mental illness to a degree that warrants hospitalization') *and* Code § 53.1–40.9 (providing for an involuntary civil commitment proceeding for a 'prisoner whose release from the custody of the [DOC] is imminent and who may have a mental illness and be in need of hospitalization or treatment'). As a DOC inmate, Williams can be provided with mental health treatment options consistent with the recommendations of the psychologist and psychiatrist who examined him, or other assessments of his mental state and needs undertaken during his

27

incarceration, if he continues to need such treatment.  Therefore, the circuit court's order sending Williams to prison prior to his involuntary civil commitment does not result in a grave injustice as regards his alleged deprivation of treatment.").  Accordingly, the undersigned **FINDS** that Petitioner is not entitled to relief under any of the grounds asserted in either the Petition or the Amended/Supplemental Petition, and therefore the undersigned **RECOMMENDS** that the Respondents' Motion to Dismiss (ECF No. 30) be **GRANTED**, and both the Petition (ECF No. 1) and the Amended/Supplemental Petition (ECF No. 12) be **DISMISSED AND DENIED.**

**D. Outstanding Motions**

    1.  Petitioner's Motion for Preliminary Injunction (ECF No. 14)

        On December 2, 2016, Petitioner filed a Motion for Preliminary Injunction wherein he complained that Marion continually kept him in isolation and or in segregation unit, and requested that the Court provide injunctive relief to prevent Petitioner's further subjection to such conditions. ECF No. 14.  As the Supreme Court has cautioned, "[a] preliminary injunction is an 'extraordinary and drastic remedy' . . . . it is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, p. 129 (2d ed.1995) (footnotes omitted); *Yakus v. United States*, 321 U.S. 414, 440 (1944)) (internal citations omitted).  "Rather, a party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'"  *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (quoting *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418, 428 (2006) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975))).  However, "[a]djudication of the merits is most appropriate if the injunction rests on a question of law and it is plain that the plaintiff cannot prevail.  In such cases,

the defendant is entitled to judgment." *Munaf v. Geren*, 553 U.S. 674, 691–92 (2008) (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287 (1940); *North Carolina R. Co. v. Story*, 268 U.S. 288, 292 (1925); *City and County of Denver v. New York Trust Co.*, 229 U.S. 123, 136 (1913)). Such is the case in the instant matter because "a prisoner has no right to a specific custody classification, to a transfer, to a non-transfer, or to work release." *Hall v. United States*, No. 5:11-HC-2159-D, 2012 WL 1196234, at \*2 (E.D.N.C. Apr. 10, 2012) (citing *O'Bar v. Pinion*, 953 F.2d 74, 83-84 (4th Cir. 1991)). Furthermore, this Court declines to intervene in the administration of daily prison life absence a violation of Petitioner's basic Constitutional rights. *See O'Bar v. Pinion*, 953 F.2d 74, 83 (4th Cir. 1991) ("Prison officials are given broad administrative discretion in the management of the confinement of inmates, and no liberty interest is implicated so long as the 'conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and does not otherwise violate the Constitution' . . . . Changes in prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges are matters contemplated within the scope of his original sentence to prison.") (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); citing *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991)) (internal citations omitted). Additionally, the undersigned notes that Petitioner's proclivity for self-harm and repeated assaults on VDOC and VDBHDS facility staff members require that Petitioner be confined to a facility capable of accommodating Petitioner's Security Level 5. *See* ECF No. 57, attach. 2 at 1-2, ¶ 5. *See also Williams v. Commonwealth*, 294 Va. 25, 29 (2017) ("The DOC is also responsible for Williams' safety and the safety of others with whom he comes into contact during his period of incarceration.") (citing *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (noting that the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the

29

inmates," and that they "have a duty . . . to protect prisoners from violence at the hands of other prisoners") (internal quotation marks omitted in original)).

Accordingly, the undersigned **RECOMMENDS** that Petitioner's Motion for Preliminary Injunction, ECF No. 14 be **DENIED**.

2. Petitioner's Motion for Injunctive Relief by Declaratory Judgment (ECF No. 15)

On December 2, 2016, Petitioner filed a Motion for Injunctive Relief by Declaratory Judgment. ECF No. 14. Therein, Petitioner requests that the Court declare that Petitioner has a right to be treated at VDBHDS and order that Petitioner be transferred to a facility within the custody of the Commissioner of VDBHDS. Additionally Petitioner requests that the Court declare that if Petitioner's entitlement to the specific treatment and terms he seeks are unfulfilled, order the offending parties to pay damages to Petitioner. For substantially the same reasons underlying the undersigned's recommended disposition of Petitioner's Motion for Preliminary Injunction (ECF No. 14), the undersigned **RECOMMENDS** that Petitioner's Motion for Injunctive Relief by Declaratory Judgment, ECF No. 15 be **DENIED**. *See* Part II.D.1, *supra*.

3. Petitioner's Motion to Hold in Abeyance (ECF No. 17)

On December 12, 2016, Petitioner filed a Motion to Hold in Abeyance (docketed as a "Motion to Stay"). ECF No. 17. Therein, Petitioner explained that he was being transferred from Marion to the Virginia Peninsula Regional Jail for a court hearing in Williamsburg, and requested that the Court refrain from taking any action until he was returned to Marion and able to respond and defend his claims. In light of the fact that no dispositive action was taken by the Court or the Respondents and Petitioner faced no deadlines between Petitioner's filing of this Motion on December 12, 2016 and May 31, 2017 when the Respondents filed their Motion to Dismiss, the undersigned **RECOMMENDS** that Petitioner's Motion to Hold in Abeyance, ECF No. 17 be

**DENIED AS MOOT**.

    4.  <u>Petitioner's Motion for Entry of a Default Judgment (ECF No. 22)</u>

On April 19, 2017, Petitioner filed a Motion for Default Judgment, seeking the Court enter judgment in Petitioner's favor and grant him the relief requested in the Petition and the Amended/Supplemental Petition based on the Respondents' failure to respond to Petitioner's claims and pending Motions (ECF Nos. 6, 14, 15) by a date certain, despite being directed to do so by the Court.  In light of the Court's acceptance and granting of the Respondents' Motion to Dismiss, Petitioner's Motion for Entry of a Default Judgment is **DENIED AS MOOT**.

    5.  <u>Respondents' Motion for Leave to File Out of Time (ECF No. 28)</u>

On May 31, 2017, Respondents' filed a Motion for Leave to File a Response to the Petition and outstanding Motions and a memorandum of law in support.  ECF Nos. 28-29.  Therein, counsel for Respondents represented to the Court that during the month of January 2017, the Office of the Attorney General experienced problems with its e-mail system and believe that the electronic notices sent on January 25 and 26, 2017, may have been blocked from its system.  ECF No. 28 at 1-2.  Upon inquiry by the Clerk as to their failure to respond, Respondents immediately made efforts to comply with the Court's order and obtain permission from the Court to grant their extension and to deem their responsive pleadings and Motion to Dismiss timely filed.  Accordingly, and for good cause shown, the Respondents' Motion for Leave to File Out of Time, ECF No. 28 is **GRANTED** and the Respondents' Motion to Dismiss and Memorandum in Support, Rule 5 Answer, and Roseboro Notice (ECF Nos. 30-33) **SHALL** be treated as timely filed by the Clerk.

    6.  <u>Petitioner's Motion for Extension (ECF No. 35)</u>

On June 15, 2017, Petitioner filed a Motion for Extension, seeking additional time to file his

responses to the Respondents' newly filed Motion to Dismiss. ECF No. 35. The Respondents' Motion to Dismiss was filed on May 31, 2017. By the Clerk of Court's calculations, Petitioner's response thereto was not due until August 1, 2017. Petitioner filed not one, but two Responses in Opposition to the Respondents' Motion to Dismiss, and did so well before August 1, 2017. *See* ECF No. 36 (filed June 23, 2017); ECF No. 41 (filed July 3, 2017). Accordingly, Petitioner's Motion for Extension, ECF No. 35 is **DENIED AS MOOT**.

### 7.   Petitioner's Motion for Summary Judgment (ECF No. 37)

On June 23, 2017, after the Respondents had already filed their Motion to Dismiss (ECF No. 30), Petitioner filed a Motion for Summary Judgment. ECF No. 37. Therein, Petitioner sought judgment as a matter of law that he was entitled to the relief sought in the Petition and the Amended/Supplemental Petition. ECF No. 37 at 1. In light of the undersigned's recommendation that Respondents' Motion to Dismiss be granted, and that both the Petition and the Amended/Supplemental Petition be denied and dismissed, as well as the undisputed material facts,[6] Petitioner is not entitled to judgment as a matter of law. Accordingly, the undersigned **RECOMMENDS** that Petitioner's Motion for Summary Judgment, ECF No. 37, be **DENIED AS MOOT**.

### 8.   Petitioner's Motion for Extension of Time (ECF No. 38)

As noted in Part I.D.8, *supra*, on June 23, 2017, Petitioner filed a "Motion for Time Dilation" apparently seeking a general extension of time beyond that which is afforded litigants by the federal and local rules to reply to any and all of the Respondents' filings. It appears to the Court that this Motion is Petitioner's attempt to absolve himself of his obligation to request the Court's

---

[6] The undersigned relies on the recitation of the relevant background and procedural facts and treats such facts as undisputed material facts for the purposes of considering Petitioner's Motion for Summary Judgment. *See* Part I, *supra*.

permission each time he requires an extension of time to respond to something.  *See Gray v. Lee*, 608 F. App'x 172, 173 (4th Cir. 2015) ("It is our 'longstanding practice . . . to classify pro se pleadings from prisoners according to their contents, without regard to their captions.'") (quoting *United States v. Winestock*, 340 F.3d 200, 203 (4th Cir. 2003)).  To be sure, Petitioner is not entitled to a permanent, standing Order granting him additional time to respond.  The Court's position is informed by the Federal and Local Rules of Civil Procedure, and specifically, Local Civil Rule 7(I), which provides that "[a]ny requests for an extension of time relating to motions must be in writing and, in general, will be looked upon with disfavor."  E.D. Va. Local Civ. R. 7(I).  Moreover, by virtue of his status as a *pro se*, incarcerated litigant, Petitioner is already afforded the great benefit of the application of "the mailbox rule."  In *Houston v. Lack,* the Supreme Court "announced the prison mailbox rule[,] establishing that a *pro se* litigant's legal papers are considered filed upon 'delivery to prison authorities, not receipt by the clerk' . . . .  The prison mailbox rule protects against potential mishandling or delay by prison staff and others, whether intentional or unintentional."  *United States v. McNeill*, 523 F. App'x 979, 981 (4th Cir. 2013) (citing *Houston v. Lack*, 487 U.S. 266, 275 (1988)).  Accordingly, Petitioner's Motion for Extension, ECF No. 38, is **DENIED**.

### 9. Petitioner's Motion to Stay Proceedings (ECF No. 47)

On September 20, 2017, Petitioner filed a "Motion to Stay the Proceedings" because "Petitioner is in the process of attempting to obtain counsel on retainer to represent him for this habeas matter." ECF No. 47 at 1.  Under the facts of the instant federal habeas proceeding, there is no right to counsel..  *See McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (holding there is no constitutional right to counsel in non-capital federal habeas corpus proceedings); *see also Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975).  Moreover, as of the date of this Amended Report and

Recommendation, Petitioner has had approximately five (5) months to obtain counsel to represent him and has been unable to do so. Accordingly, the undersigned **RECOMMENDS** that Petitioner's Motion to Stay Proceedings, ECF No. 47 be **DENIED**.

     10. Petitioner's Motion for Reconsideration (ECF No. 55)

     On November 9, 2017, Petitioner filed a Motion for Reconsideration, requesting that the Court reconsider its previous denial of Petitioner's Motion for Injunctive Relief (ECF No. 6). In an Order dated March 7, 2017, the Court denied Petitioner's Motion for Preliminary Injunction as moot, based on the Court's finding that Petitioner was no longer being housed in a super-maximum security facility and instead was committed to the state's mental health system. ECF No. 21. Petitioner requests that the Court reconsider his previous motion because on October 11, 2017, Petitioner was again transferred from Marion to a different super-max facility. According to Petitioner, without an injunction, will continue to be transferred to other super-max prisons and subjecting him to irreparable injury. ECF No. 55 at 1. Many of the reasons undergirding the undersigned's recommendation that the Petition and Amended/Supplemental Petition, be denied also inform the undersigned's recommendation that Petitioner's Motion for Reconsideration, and indeed any of the requests for injunctive relief should also be denied. In the absence of case law to the contrary, this Court is unable and unwilling to dictate to a state agency, the specific terms of Petitioner's confinement and under whose custody and care Petitioner must remain. *See e.g., O'Bar v. Pinion*, 953 F.2d 74, 83 (4th Cir. 1991) (giving prison officials broad administrative discretion in the management of incarcerated inmates so long as constitutional rights are preserved) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); citing *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991)). Petitioner correctly identifies that he has a right to medical treatment; however, Petitioner is incorrect to the extent that he has the right to dictate the provider or location of such

medical care.    Accordingly, the undersigned **RECOMMENDS** that Petitioner's Motion for Reconsideration, ECF No. 55 be **DENIED**.

    11. <u>Petitioner's Motion for Evidentiary Hearing (ECF No. 58)</u>

    On November 27, 2017, Petitioner filed a Response to the Court's November 9, 2017 Order (ECF No. 54) and requested an evidentiary hearing to present evidence regarding the disposition of the Respondents' Motion to Dismiss in light of the District Court's re-referral of the matter to the undersigned.  ECF No. 58.  As the undersigned already noted at the beginning of this Amended Report and Recommendation, "[t]he undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J)."  Accordingly, Petitioner's Motion for Evidentiary Hearing, ECF No. 58 is **DENIED**.

### III. <u>RECOMMENDATION</u>

    For these reasons, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss, ECF No. 30, be **GRANTED**, and the Petition, ECF No. 1, and Amended/ Supplemental Petition, ECF No. 12, be **DENIED AND DISMISSED WITH PREJUDICE**.    Accordingly, the undersigned also recommends that Petitioner's Motion for Preliminary Injunction, ECF No. 14 be **DENIED**; Petitioner's Motion for Injunctive Relief by Declaratory Judgment, ECF No. 15 be **DENIED**; Petitioner's Motion to Hold in Abeyance, ECF No. 17 be **DENIED AS MOOT**; Petitioner's Motion for Entry of a Default Judgment, ECF No. 22 be **DENIED AS MOOT**; the Respondents' Motion for Leave to File Out of Time, ECF No. 28 be **GRANTED** and the Respondents' Motion to Dismiss and Memorandum in Support, Rule 5 Answer, and Roseboro Notice (ECF Nos. 30-33) **SHALL** be treated as timely filed by the Clerk; Petitioner's Motion for Extension, ECF No. 35 be **DENIED AS MOOT**; Petitioner's Motion for Summary Judgment, ECF No. 37, be **DENIED AS MOOT**; Petitioner's Motion for Extension, ECF No. 38, be **DENIED**;

Petitioner's Motion to Stay Proceedings, ECF No. 47 be **DENIED**; Petitioner's Motion for Reconsideration, ECF No. 55 be **DENIED**; and Petitioner's Motion for Evidentiary Hearing, ECF No. 58 be **DENIED**.

## IV. <u>REVIEW PROCEDURE</u>

By receiving a copy of this Amended Report and Recommendation, Petitioner is notified that:

1.   Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a).   A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2.   A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.   The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Amended Report and Recommendation to Petitioner and to counsel for Respondent.

/s/

Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 12, 2018

37